[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-11789

_____

C&W FACILITY SERVICES, INC.,

Petitioner,

*versus*

SECRETARY OF LABOR,
OCCUPATIONAL SAFETY AND HEALTH REVIEW
COMMISSION,

Respondents.

_____

Petition for Review of a Decision of the
Occupational Safety and Health Review Commission
Agency No. 17-2056

_____

Before WILLIAM PRYOR, Chief Judge, GRANT, and HULL, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This petition for review requires us to decide whether the Occupational Safety and Health Review Commission erred when it decided that C&W Facility Services, Inc., violated a regulatory requirement, 29 C.F.R. § 1910.132(a), by failing "to provide and require the use of personal protective equipment . . . in the form of [personal flotation devices] to an employee pressure washing a boat dock." Our precedents required the Secretary to prove either that the provision and use of personal protective equipment is industry custom or that "the employer ha[d] actual knowledge that a hazard requires the use of . . . [the] personal protective equipment." *Fla. Mach. & Foundry, Inc. v. Occupational Safety & Health Rev. Comm'n*, 693 F.2d 119, 120 (11th Cir. 1982). But the Secretary presented no evidence of an industry custom requiring the use of personal flotation devices and no substantial evidence that C&W had actual knowledge that pressure washing its boat dock required the use of those devices. The Commission decided that the Secretary satisfied his burden by proving only that C&W was aware of the conditions that made the boat dock hazardous. Because the Commission failed to apply the correct standard and the record lacks substantial evidence of actual knowledge under that standard, we grant the petition for review, set aside the order of the Commission, and vacate the citation.

## I. BACKGROUND

Johnnie Norton operated a pressure washer with a rotary scrubber on a dock at the Tampa Convention Center as part of his normal job duties. The concrete dock was approximately 289 feet and 7 inches long by 10 feet and 2 inches wide. The dock had no guardrails or barricades and was surrounded on three sides by water. At the edge of the dock where Norton was pressure washing, the bay was approximately 19 feet deep. Norton fell into the bay while performing his work and drowned. Norton was wearing rubber boots and was not wearing a personal flotation device. Norton had been working at the Tampa Convention Center for about a year.

Upon receiving reports of Norton's death, the Occupational Safety and Health Administration sent Compliance Officer Marrero to investigate. Officer Marrero examined the scene of the accident and conducted a series of interviews with other employees. During his investigation, Officer Marrero did not identify any incidents of employees falling off the dock and into the water before Norton's fatal accident, but he did identify two employees who pressure washed the same dock as Norton in the years leading up to his death who voluntarily wore personal flotation devices. Several witnesses told Officer Marrero that one employee would always wear a personal flotation device while working close to the water because he had a fear of water. The other employee, who once pressure washed the dock when Norton was out sick, told Officer Marrero that although no supervisor instructed him to do so

and he was able to swim, he went to the warehouse and acquired a life jacket to wear while he washed the dock. Mike Sheehan, an operations manager at the Convention Center, asked Norton if he could swim before Norton took over the task of pressure washing the docks from the employee who always wore a personal flotation device. Norton told Sheehan that he could do so.

As a result of Officer Marrero's inspection, the Administration issued a citation to C&W for its failure to provide and require the use of a personal flotation device to an employee who was pressure washing the dock in violation of federal health and safety regulations. The Administration classified the citation as "serious" because it involved a fatality, and proposed a $12,675 penalty.

C&W contested the citation, but an administrative law judge affirmed the citation after a three-day hearing. The administrative law judge concluded that Norton was C&W's "employee" within the meaning of the Occupational Safety and Health Act, 29 U.S.C. § 652. The administrative law judge concluded, in the alternative, that C&W was properly cited as the "controlling employer" under the Administration's Multi-Employer Citation Policy. *See* OCCUPATIONAL SAFETY & HEALTH ADMIN., DIRECTIVE CPL 2-0.124 (1999). And the administrative law judge found that the Secretary had satisfied his burden of proving a violation of section 1910.132(a), including that C&W had the requisite knowledge to be held liable.

The administrative law judge acknowledged that our precedents required the Secretary to prove either that the use of personal

flotation devices was an industry custom or that C&W had "clear actual knowledge that personal protective equipment was necessary under the circumstances." *S&H Riggers & Erectors, Inc. v. Occupational Safety & Health Rev. Comm'n*, 659 F.2d 1273, 1285 (5th Cir. Unit B Oct. 1981). Because the Secretary did not present any evidence of industry custom at the hearing, the administrative law judge considered only whether C&W had actual knowledge. The administrative law judge relied on a decision from the Tenth Circuit, *Jake's Fireworks Inc. v. Acosta*, 893 F.3d 1248, 1260 (10th Cir. 2018), to assert that "[t]he Secretary need not show that an employer understood or acknowledged that the physical conditions were actually hazardous" but "only that the employer was aware of the physical conditions that constitute a violation."

The administrative law judge found that C&W had "clear actual knowledge that [personal protective equipment] was necessary under the circumstances" because "[t]he circumstances (that the dock was unguarded and surrounded on three sides by the Tampa Bay, and that there were no ladders extending off the dock) are facts that existed before Mr. Norton drowned" and because the fact that Sheehan asked Norton if he could swim proved that C&W was "aware of these 'circumstances.'" The administrative law judge also found that "[C&W] had specific confirmed knowledge that [personal flotation devices] were warranted because C&W Supervisor Sheehan specifically asked Mr. Norton if he could swim." He reasoned that "Sheehan's query . . . is evidence of actual knowledge that pressure washing the boat dock at the [Tampa

Convention Center] without a [personal flotation device] being issued and worn presented a drowning hazard." The administrative law judge gave heavy weight to the evidence that two other employees who pressure washed the dock voluntarily wore life jackets while doing so. And he described "[o]perating a pressure washer and rotary scrubber on an unguarded dock close to water" as "an open and obvious hazard," citing deposition testimony asserting that "anyone tasked with using a pressure washer to clean the dock would have to get the entire dock, including the very edge of the dock that abuts the water."

C&W appealed the decision of the administrative law judge to the Commission, which declined to review the decision. So, the decision of the administrative law judge became a final order of the Commission. *See* 29 U.S.C. § 661(j).

## II. STANDARDS OF REVIEW

We will set aside an order of the Commission only if it is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A); *Fluor Daniel v. Occupational Safety & Health Rev. Comm'n*, 295 F.3d 1232, 1236 (11th Cir. 2002). Factual findings of the Commission are conclusive so long as they are supported by "substantial evidence" in the record. 29 U.S.C. § 660(a); *Fluor Daniel*, 295 F.3d at 1236. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *J.A.M. Builders, Inc. v. Herman*, 233 F.3d 1350, 1352 (11th Cir. 2000) (internal quotation marks omitted).

### III. DISCUSSION

The Administration cited C&W for violating section 1910.132(a), which provides that protective equipment must be provided by employers and used by employees "wherever it is necessary by reason of hazards." *See* 29 C.F.R. § 1910.132(a). Section 1910.132(a) is a "performance standard," which means that it identifies its objective but does not prescribe the means for or the specific obligations of the employer to comply with the objective. Because "[d]ue process mandates that an employer receive notice of the requirements of any [Administration] regulation before he is cited for an alleged violation," performance standards can create problems of fair notice. *S&H Riggers*, 659 F.2d at 1279; *accord Owens-Corning Fiberglass Corp. v. Donovan*, 659 F.2d 1285, 1288 (5th Cir. Unit B Oct. 1981) ("Due process requires that employers be given reasonably clear advance notice of what is required of them by [Administration] regulations.").

In the context of performance standards like section 1910.132(a), settled precedent resolves the problem of fair notice with a heightened knowledge requirement. That is, to hold an employer liable under a performance standard, the Secretary must prove either that the protective measure is industry custom or that the employer had "actual knowledge that a hazard requires the use of some other or additional personal protective equipment." *Fla. Mach. & Foundry*, 693 F.2d at 120. The Secretary concedes that "no evidence demonstrating an industry custom of requiring [personal flotation devices] for workers doing pressure washing on docks was

introduced before the [administrative law judge]," so the only dispute is whether C&W had "actual knowledge."

We divide our discussion in two parts. First, we explain that the Commission misapplied the standard for actual knowledge. Second, we explain that there is no substantial evidence to support a finding that C&W had actual knowledge of the requirement to provide and require the use of personal flotation devices for employees when they are pressure washing the dock.

### A. The Commission Misapplied the Standard for "Actual Knowledge."

Our precedent is clear: to hold an employer liable under section 1910.132(a) in the absence of an industry custom, the Secretary must prove that the employer had "actual knowledge that personal protective equipment is necessary to protect its employees from a particular hazard." *S&H Riggers*, 659 F.2d at 1278. Actual knowledge cannot be "implied from voluntary safety efforts standing alone," but "an employer's safety program may be considered in support of a finding of knowledge along with other factors indicating to the employer the need for particular safety equipment." *Owens-Corning*, 659 F.2d at 1288. Instead, our precedent demands "evidence in the record of a specific, confirmed knowledge on [the employer's] part regarding a hazard warranting a [personal protective equipment] requirement." *Cotter & Co. v. Occupational Safety & Health Rev. Comm'n*, 598 F.2d 911, 915 (5th Cir. 1979). In determining whether there is substantial evidence of actual knowledge, we have paid close attention to previous workplace

accidents, *see id.* at 914, the extent to which employees demand protective equipment, *see Owens-Corning*, 659 F.2d at 1289, and the obviousness of the hazard, *see S&H Riggers*, 659 F.2d at 1282–83.

Our requirements for "actual knowledge" are illustrated in three decisions of our predecessor circuit. In *Cotter & Co. v. Occupational Safety & Health Review Commission*, our predecessor circuit reversed an order of the Commission holding an employer liable under section 1910.132(a) for failing to require employees to wear steel-toed shoes on a shipping and receiving dock. 598 F.2d at 912. There, the employer had a program through which employees could voluntarily buy steel-toed shoes, but the shoes were not required in the workplace. *Id.* In the two years preceding the Administration's inspection, "[o]nly one injury . . . would have been prevented or mitigated by steel-toed shoes." *Id.* at 914. The court determined that the company did not have actual knowledge because it found "no evidence in the record of a specific, confirmed knowledge on the employer's part regarding a hazard warranting a steel-toed shoe requirement." *Id.* at 915. The court also warned against "the folly of discouraging an employer, by expanding the scope of his liability beyond what it would otherwise be, from exhorting employees to take every possible safety precaution in the development of a superior industrial safety program." *Id.*

In *Owens-Corning Fiberglass Corp. v. Donovan*, our predecessor circuit affirmed an order of the Commission holding an employer liable for failing to require employees to wear gloves when

handling fiberglass insulation. 659 F.2d at 1286. The court concluded that there was substantial evidence to support the administrative law judge's determination that the employer had actual knowledge that gloves were "necessary to protect its employees from fiberglass itch" because the employer had been aware "for at least [the previous] thirty years that many, if not most, employees exposed to fiberglass develop fiberglass itch . . . and that wearing gloves [was] the only way to prevent fiberglass itch." *Id.* at 1288–89. The court clarified that although "[k]nowledge that personal protective equipment is required may not be implied from voluntary safety efforts standing alone[,] . . . an employer's safety program may be considered in support a finding of knowledge along with other factors indicating to the employer the need for particular safety equipment." *Id.* at 1288. The Court assessed the proportion of employees that took advantage of the voluntary program and considered it important that, unlike in *Cotter*, where the voluntary steel-toed shoes program served only to accommodate the preferences of individual employees, it was "apparent from the record . . . that [the employer's] glove program resulted from its employees' demands, through their union, that [the employer] provide gloves to all who desired them." *Id.* at 1289.

In *S&H Riggers & Erectors, Inc. v. Occupational Safety & Health Review Commission*, our predecessor circuit reversed an order of the Commission holding an employer liable for failing to require employees to use safety belts on the roof of a multi-story building. 659 F.2d at 1275–76. The court held that there was not

substantial evidence that the employer had actual knowledge of the requirement, even though the company "did not contest a previous citation for . . . failure to require safety belts." *Id.* at 1284. And the Court rejected the Secretary's "faulty premise that the presence of an 'obvious' hazard by itself gives notice of the need to provide safety belts or other protective equipment." *Id.* at 1282. In fact, "the very 'obviousness' of a hazard" such as an unguarded, open roof might "lead a reasonable employer to conclude that no further safety precautions are necessary" because the workers would have a "constant awareness of the danger of falling." *Id.* at 1283. Although *S&H Riggers* involved an alleged violation of section 1926.28(a), not section 1910.132(a), the actual-knowledge requirements for the two regulations are the same. *Id.* at 1275 n.2, 1278.

The administrative law judge misapplied this standard. Although the administrative law judge cited the correct standard from *S&H Riggers*, he also incorrectly asserted that "[t]he Secretary need not show that an employer understood or acknowledged that the physical conditions were actually hazardous" but "must show only that the employer was aware of the physical conditions that constitute a violation." These statements directly conflict with our precedents, which require both actual knowledge of the hazard and actual knowledge that the hazard requires the provision and use of personal protective equipment. *See Cotter*, 598 F.2d at 915; *Owens-Corning*, 659 F.2d at 1290; *S&H Riggers*, 659 F.2d at 1278, 1285. This heightened knowledge requirement is a requirement of due process, and the administrative law judge's failure to apply it means

that the decision was "not in accordance with law." *See* 5 U.S.C. § 706(2)(A).

### B. The Record Lacks Substantial Evidence of Actual Knowledge.

The record also lacks substantial evidence to support a finding that C&W had actual knowledge. Under our precedents, the evidence relied on by the administrative law judge—the condition of the dock, Sheehan's query whether Norton could swim, the two instances of voluntary personal-flotation-device use, and the "open and obvious" nature of the hazard—cannot sustain a finding of actual knowledge of the requirement to provide and require the use of personal flotation devices. Because there is not more than a "scintilla" of evidence to support a finding of actual knowledge, *see J.A.M. Builders*, 233 F.3d at 1352, we set aside the order of the Commission.

C&W's awareness of the circumstances of Norton's work on the dock is insufficient to support a finding of actual knowledge. In both *Cotter* and *S&H Riggers*, the employers were aware of the conditions under which their employees worked. But this awareness did not constitute "specific, confirmed knowledge . . . regarding a hazard warranting a [personal protective equipment] requirement." *Cotter*, 598 F.2d at 915; *accord S&H Riggers*, 659 F.2d at 1285.

Likewise, Sheehan's question to Norton about his ability to swim does not support a finding of actual knowledge that personal flotation devices were required. At most, this evidence supports a

finding that C&W was aware of a possible hazard for employees who could not swim. It also evidences that C&W may have concluded that an employee's ability to swim negated the possible hazard. As the Court explained in *Owens-Corning*, "[a]n employer may be aware of a possible hazard, yet still lack notice that mandatory personal protective equipment is necessary, if the hazard has never given rise to an injury." 659 F.2d at 1290. In the absence of evidence of prior incidents of employees falling off the dock, C&W's awareness of a possible hazard for employees unable to swim does not support a finding of "actual knowledge that [the] hazard require[d] the use of [personal flotation devices]." *See Fla. Mach. & Foundry, Inc.*, 693 F.2d at 120; *see also Owens-Corning*, 659 F.2d at 1290 ("[A] very low injury rate has a definite bearing on the question whether an employer has notice that personal protective equipment is necessary under a general regulation such as [section] 1910.132(a).").

The voluntary use of personal flotation devices by two other employees also does not support a finding of actual knowledge that personal flotation devices were *required* to abate the hazard. Like the voluntary steel-toed shoes program in *Cotter*, the voluntary safety precautions of two employees are evidence only that the preferences of these employees were accommodated, "rather than . . . reflect[ing] the knowledge of the employer that the [personal flotation devices] were necessary precautions." *See* 598 F.2d at 914–15. The administrative law judge's attempt to distinguish *Cotter* on the ground that the employer there encouraged employees "to

take every possible safety precaution" is unavailing. *See id.* at 915. C&W's failure to encourage its employees to "take every possible safety precaution" cannot be evidence that C&W knew that personal flotation devices were necessary. If anything, it suggests a lack of that knowledge.

Finally, the "obviousness" of a hazard is not evidence of actual knowledge and does not absolve the Secretary of his burden, especially when the obviousness of the hazard would put employees on notice of the potential risk. *See S&H Riggers*, 659 F.2d at 1282–83. "In the absence of an industry custom or standard requiring the use of [personal flotation devices], or a history of fall accidents, [C&W] . . . could [have] reasonably conclude[d] that employees' constant awareness of the danger of falling provides adequate protection against falls from flat, open surfaces." *See id.* at 1283. Like C&W's failure to encourage its employees to "take every possible safety precaution," the "open and obvious" nature of the hazard on the dock might cut against a finding of actual knowledge that personal flotation devices were necessary.

Because substantial evidence does not support a finding that C&W had actual knowledge of the requirement to provide and require the use of personal flotation devices for employees pressure washing the dock, we grant the petition for review, "set[] aside . . . the order of the Commission," and vacate the citation. *See* 29 U.S.C. § 660(a). "If the evidence would support but not compel a finding of actual knowledge, a remand would be required in order to permit the Commission to complete the factfinding process"

under the correct standard. *S&H Riggers*, 659 F.2d at 1284. But "[b]ecause we hold that a finding of actual knowledge would not be supported by substantial evidence in the record" even if the administrative law judge applied the correct standard, "a remand would be inappropriate." *Id.* And because we have vacated the citation, we need not discuss whether Norton was an "employee" of C&W within the meaning of the Occupational Safety and Health Act or whether C&W was the "controlling employer" within the meaning of the Administration's Multi-Employer Citation Policy.

## IV. CONCLUSION

The petition for review is **GRANTED,** the order of the Commission is **SET ASIDE**, and the citation is **VACATED**.