**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| FLOWER WORLD, INC.,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>JOEL SACKS, Director of the<br>Washington Department of Labor<br>and Industries; CRAIG BLACKWOOD,<br>Acting Assistant Director of the<br>Washington Department of Labor<br>and Industries, in their personal<br>capacities; DOE, through X, in their<br>official capacities as employees of<br>the Washington Department of<br>Labor and Industries,<br>*Defendants-Appellees*. | No. 21-35641<br><br>D.C. No.<br>3:21-cv-05305-<br>RJB<br><br><br>OPINION |

Appeal from the United States District Court
for the Western District of Washington
Robert J. Bryan, District Judge, Presiding

Argued and Submitted June 10, 2022
Seattle, Washington

Filed August 11, 2022

Before:  Sandra S. Ikuta and Eric D. Miller, Circuit Judges,
and Dean D. Pregerson,[*] District Judge.

Opinion by Judge Ikuta

_____

**SUMMARY**[**]

_____

**Civil Rights**

The panel affirmed the district court's dismissal of a complaint for failure to state a claim and held that certain mandates issued by the Governor of Washington to address the public health crisis caused by the spread of coronavirus (COVID-19) were not preempted by the Occupational Safety and Health Act.

In May 2020, the Governor issued Proclamation 20-57, "Concerning the Health of Agricultural Workers," and an addendum, "Agricultural COVID-19 Requirements" (collectively, the "Proclamation"). The Proclamation acknowledged the hazards posed by "the worldwide spread of COVID-19" and prohibited "any agricultural employer from continuing to operate beyond June 3, 2020, unless the employer complied with all provisions of the Agriculture COVID-19 Requirements – Provisions for All Worksites and Work-Related Functions."

_____

[*] The Honorable Dean D. Pregerson, United States District Judge for the Central District of California, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel first held that plaintiff's challenge to the Proclamation was ripe for review because Washington's Department of Labor & Industries' Division of Occupational Safety and Health had issued a citation to plaintiff for violation of the requirements set forth in the Proclamation and imposed a $4,200 fine that had to be paid within fifteen working days. There was nothing speculative about this enforcement action.

The panel held that the Proclamation was not preempted because the requirements in the Proclamation did not relate to an occupational health and safety standard promulgated by the Occupational Safety and Health Administration (OSHA). In light of the Supreme Court's reasoning in *NFIB v. OSHA*, 142 S. Ct. 661 (2021), OSHA lacked the authority to promulgate a public health measure that would regulate the general risk of COVID-19 in the workplace. Because OSHA could not promulgate such a federal standard, none of its existing regulatory standards could preempt a state's general public health and safety measures addressing the threats posed by COVID-19. Rejecting OSHA's broad interpretation of its existing regulations as applying generally to COVID hazards in the workplace, the panel construed the regulations cited by plaintiff as addressing specific occupational hazards caused by workplace processes that result in pollution at the workplace, not the hazard of COVID-19 or other viruses more generally. Accordingly, the panel held that the Proclamation was not preempted by the Occupational Safety and Health Act.

**COUNSEL**

Richard M. Stephens (argued), Stephens & Klinge LLP, Bellevue, Washington, for Plaintiff-Appellant.

Anastasia R. Sandstrom (argued), Senior Counsel; Sarah Kortokrax, Assistant Attorney General; Robert W. Ferguson, Attorney General; Attorney General's Office, Seattle, Washington; for Defendants-Appellees.

**OPINION**

IKUTA, Circuit Judge:

This cases raises the question whether certain mandates issued by the Governor of Washington to address the public health crisis caused by the spread of coronavirus (COVID-19) are preempted by the Occupational Safety and Health Act (OSH Act). We hold that the mandates at issue are not preempted by the OSH Act.

I

The OSH Act requires that every employer provide a workplace that is "free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees" (the "general duty" clause) and "comply with occupational safety and health standards promulgated" by the Occupational Safety and Health Administration (OSHA). 29 U.S.C. § 654(a). An "occupational safety and health standard" is defined as "a standard which requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably

necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. § 652(8). "The general duty clause applies when there are no specific standards." *Donovan v. Royal Logging Co.*, 645 F.2d 822, 829 (9th Cir. 1981).

"[T]he OSH Act pre-empts all state 'occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated.'" *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 105 (1992) (plurality) (quoting 29 U.S.C. § 667(b)).[1] A state which "desires to assume responsibility for development and enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated" must submit a state plan for approval. 29 U.S.C. § 667(b). Because "Congress intended to subject employers and employees to only one set of regulations, be it federal or state," *Gade* held that "the only way a State may regulate an OSHA-regulated occupational safety and health issue is pursuant to an approved state plan that displaces the federal standards." 505 U.S. at 99. If the state does not have an approved plan, the federal standards concerning an issue preempt state standards concerning that same issue. *Id*.

Washington State adopted a workplace safety plan in 1973, *see* Washington Industrial Safety and Health Act (WISHA), Wash. Rev. Code § 49.17, which was subsequently

---

[1] We are bound by the *Gade* plurality opinion with respect to its analysis of preemption because "a majority of the Court rejected the notion of concurrent state and federal jurisdiction in areas where [OSHA] issues a standard." *Industrial Truck Ass'n, Inc. v. Henry*, 125 F.3d 1305, 1310 (9th Cir. 1997) (cleaned up).

approved by OSHA, *see* 29 C.F.R. § 1952.4. Like OSHA, "two distinct duties arise from" WISHA: a "'general duty' to maintain a workplace free from recognized hazards," and "a 'specific duty' for employers to comply with WISHA regulations." *Afoa v. Port of Seattle*, 176 Wash. 2d 460, 471 (2013) (citing Wash. Rev. Code § 49.17.060); *see also* Wash. Admin. Code § 296.307-045(1) (WISHA's general duty clause). WISHA is administered by Washington's Department of Labor & Industries' Division of Occupational Safety and Health (L&I).

II

Beginning in early 2020, the COVID pandemic posed unprecedented challenges for the federal and state governments to protect public health and safety. In February 2020, in response to the COVID challenge, the Governor of Washington declared a state of emergency and issued multiple proclamations addressing the public health and safety issues raised by the pandemic. In May 2020, the Governor issued Proclamation 20-57, "Concerning the Health of Agricultural Workers," and an addendum, "Agricultural COVID-19 Requirements" (collectively, the "Proclamation"). The Proclamation acknowledged the hazards posed by "the worldwide spread of COVID-19" and prohibited "any agricultural employer from continuing to operate beyond June 3, 2020, unless the employer complies with all provisions of the Agriculture COVID-19 Requirements – Provisions for All Worksites and Work-Related Functions." The Agricultural COVID-19 Requirements, which were applicable to all "orchards, fields, dairies," all operations listed as agricultural in WISHA regulations, "all fruit- and vegetable-packing warehouses,"

and "employer- or operator-provided transportation and housing," included the following provisions:

> (c) PPE. Employers, operators, and providers must supply, at no cost to employees, all PPE mandated by these requirements, including gloves, goggles, face shields, face masks, and face coverings. PPE must be clean and available each workday.
>
> Face coverings must be worn by all employees in accordance with the governor's Proclamation 20-25.6, subsequent iterations of the proclamation, and the related interpretive guidance and exemptions set forth by L&I . . .
>
> (d) Physical Distancing. Employers, providers, and housing operators must ensure physical distancing of six feet or more during all interactions within the scope of employment.
>
> When strict physical distancing is not feasible for a specific task, other prevention measures, such as more protective PPE, barriers, and negative pressure ventilation, are required. . . .
>
> (j) At the beginning of each day, employers must conduct a temperature check and review the symptom checklist with employees concerning themselves and their households. All thermometers must be properly sanitized between each use or each day. Any worker

with a temperature of 100.4°F or higher is considered to have a fever.

Employers are not required to maintain logs of the check-ins described by this subsection.[2]

Flower World, Inc. is a horticultural business in Washington that grows and sells plants to the general public. It employs approximately 100 workers. On July 28, 2020, L&I issued a citation to Flower World which stated:

The employer did not ensure to furnish to each employee a place of employment free from recognized hazards that are causing or likely to cause serious injury or death to employees.

In this instance, the employer did not ensure that the addendum to the Governor's Proclamation 20-57 (5/28/20) was met. The addendum discusses the requirements concerning the Health of Agricultural Workers.

The following instances were not met:

-Social distancing of six (6) feet at all times by all employees.

---

[2] https://www.governor.wa.gov/sites/default/files/COVID19Agricultura lSafetyPlan.pdf.

-Masks/Face coverings were not worn at all times by all employees.

-Temperature checks at the beginning of each work day are not being conducted.

Not following directed guidance for work potentially exposes employees to the Coronavirus which has been found to have the potential for death.

NOTE:  Employers must comply with all conditions for operation required by emergency proclamation issued under RCW 43.06.220, including Safe Start phased reopening requirements for all business and any industry specific requirements.

This violation was corrected during the inspection.  Assessed penalty: $4,200.00.

Along with this citation, L&I issued a citation invoice.  It stated that the penalty was for a serious violation of Wash. Admin. Code § 296-307-045(1) (WISHA's general duty clause), in the amount of $4,200.00.  It also stated that payment was due within "15 working days from receipt of this citation."

   In response to this citation, Flower World filed an appeal with the review board for WISHA appeals.  *See* Wash. Admin. Code § 263-12-059.[3]  Flower World then filed suit in

_____

[3] The review board stayed this proceeding pending resolution of Flower World's district court action.

federal district court against Joel Sacks and Craig Blackwood, two L&I officials in charge of enforcement, seeking declaratory and injunctive relief under 42 U.S.C. § 1983 on the ground that the state standards set forth in the Proclamation for which Flower World was cited were preempted by OSH Act.

The district court granted the L&I officials' motion to dismiss Flower World's amended complaint for failure to state a claim, and denied Flower World's motion for reconsideration. Flower World timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

III

The L&I officials first argue that we lack jurisdiction over Flower World's challenge to the Proclamation because it is not ripe. We review this issue de novo. *See Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010). An issue is constitutionally ripe only if it is "definite and concrete, not hypothetical or abstract." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (citation omitted). Where a plaintiff brings a pre-enforcement challenge, the ripeness inquiry turns on "whether the plaintiffs face a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement, or whether the alleged injury is too imaginary or speculative to support jurisdiction." *Id.* (cleaned up).

The L&I officials' ripeness challenge turns on their argument that L&I lacks authority to enforce the Proclamation because it is not a WISHA regulation or standard. According to the L&I officials, the Proclamation can be enforced only by law enforcement officials as a

criminal offense. *See* Wash. Rev. Code § 43.06.220(5) ("Any person willfully violating any provision of an order issued by the governor under this section is guilty of a gross misdemeanor."). The citation issued to Flower World, according to the L&I officials, enforced WISHA's general duty clause, and the citation's reference to the requirements of the Proclamation merely provided examples of how the employer could discharge the general duty to maintain a safe workplace. Because Flower World was not cited for a violation of the Proclamation, L&I officials claim, Flower World's challenge to the Proclamation is merely hypothetical or speculative.

We disagree. Flower World's claim is ripe because L&I issued a citation to Flower World for violation of the requirements set forth in the Proclamation and imposed a $4,200 fine that had to be paid within fifteen working days. There is nothing speculative about this enforcement action. The argument that Flower World was not cited for a violation of the Proclamation, but only for a violation of the general duty clause, is belied by the citation itself. Although the citation references the general duty clause, the citation describes Flower World's violation as failing to "ensure that the addendum to the Governor's Proclamation 20-57 (5/28/20) was met," given that "[e]mployers must comply with all conditions for operation required by emergency proclamation issued under RCW 43.06.220." The citation listed the specific instances of Flower World's alleged non-compliance with the Proclamation, including failure to ensure social distancing, mask/face covering, and temperature checks. This is sufficient to establish enforcement of the Proclamation's requirements. Moreover, contrary to L&I officials' argument, WISHA does provide L&I with the authority to enforce the Proclamation. *See* Wash. Admin.

Code § 296-800-14035(2) ("Employers must comply with all conditions for operation required by emergency proclamation issued under RCW 43.06.220."); *see also* Wash. Rev. Code § 49.17.120. Therefore, Flower World's challenge to L&I's enforcement of the requirements in the addendum to the Proclamation is non-hypothetical even if L&I relied on its power under the general duty clause to enforce the Proclamation.

IV

We now turn to Flower World's argument that the L&I officials' enforcement of the requirements set forth in the Proclamation was unlawful because such requirements are preempted by the OSH Act.

The threshold question here is whether the requirements announced in the Proclamation are preempted because they constitute a workplace health and safety standard "relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated." *Gade*, 505 U.S. at 105 (quoting 29 U.S.C. § 667(b)).

The parties primarily dispute whether the Proclamation qualifies as an occupational health and safety standard. The L&I officials argue that the citation enforced only WISHA's general duty clause, and that using the general duty clause to enforce COVID-19 safety protocols is not equivalent to the creation of a "standard" under the OSH Act. In response, Flower World argues that the citation expressly enforced the requirements in the Proclamation, which constitutes an occupational safety and health standard because "[a]ny state law requirement designed to promote health and safety in the workplace falls neatly within the Act's definition of an

'occupational safety and health standard'" for purposes of preemption. *Id.*

Rather than address this dispute, we resolve this appeal based on the L&I officials' secondary argument, that the Proclamation is not preempted because the requirements in the Proclamation do not relate to an occupational health and safety standard promulgated by OSHA.

The Supreme Court recently provided relevant guidance on this issue. *See NFIB v. OSHA*, 142 S. Ct. 661 (2021). In *NFIB*, the Supreme Court considered a rule issued by OSHA in November 2021, which required any employer with at least 100 employees to "develop, implement, and enforce a mandatory COVID-19 vaccination policy." *Id.* at 664 (quoting 86 Fed. Reg. 61,402, 61,402 (Nov. 5, 2021)). The employer was required to "verify the vaccination status of each employee and maintain proof of it." *Id.* (citing 86 Fed. Reg. at 61,552). Employers were allowed (but not required) to adopt a policy offering an alternative to vaccination, which would require unvaccinated workers to "undergo [weekly] COVID-19 testing and wear a face covering at work in lieu of vaccination." *Id.* (quoting 86 Fed. Reg. at 61,402). Employees who did not comply with the policy had to be "removed from the workplace." *Id.* (quoting 86 Fed. Reg. at 61,532). Noncompliant employers would be fined. *Id.*

The Supreme Court stayed enforcement of the rule, holding that the applicants for a stay were likely to prevail in their argument that OSHA lacked authority to impose the rule. *Id.* at 663. In reaching this conclusion, the Supreme Court provided guidance regarding the scope of OSHA's authority.

First, the Supreme Court stated that OSHA has "only the authority that Congress has provided," and that Congress authorized the agency to promulgate workplace safety standards, not broad public health measures. *Id.* at 665. Congress must "speak clearly when authorizing an agency to exercise powers of vast economic and political significance." *Id.* (quoting *Alabama Assn. of Realtors v. Department of Health and Human Servs.*, 141 S. Ct. 2485, 2489 (2021) (per curiam)).

In distinguishing between the spheres of workplace safety and public health, the Supreme Court emphasized the "crucial distinction" "between occupational risk and risk more generally." *Id.* at 666. Workplace safety standards address occupation-specific risks and hazards that employees face at work. *See id.* at 665. Such dangers must be tethered in a "causal sense" to the workplace, and they differ "in both degree and kind" from everyday risks that all persons face. *Id.* A rule addressing the risks posed by COVID is a permissible workplace safety standard under the OSH Act only "[w]here the virus poses a special danger because of the particular features of an employee's job or workplace," such as where the employee is a researcher working with the COVID-19 virus, or when "working in particularly crowded or cramped environments." *Id.* at 665–66. By contrast, public health measures address universal risks, like "crime, air pollution, or any number of communicable diseases." *Id.* at 665. Such threats do not have a causal relationship to the workplace but, instead, are "hazards of daily life." *Id.* They do not become workplace hazards "simply because most Americans have jobs and face those same risks while on the clock." *Id.*

Applying this framework, the Court held that OSHA's vaccine mandate is a public health measure, not a workplace safety standard, because it broadly addresses a hazard of daily life faced by Americans generally. *Id.* at 665. The Court also distinguished a vaccine mandate from "a fire or sanitation regulation" because it "cannot be undone at the end of the workday." *Id.* Because "permitting OSHA to regulate the hazards of daily life" would "significantly expand OSHA's regulatory authority without clear congressional authorization," *id.*, the Court concluded that the vaccine mandate "extend[ed] beyond the agency's legitimate reach," *id.* at 666.

In light of the Supreme Court's reasoning in *NFIB*, OSHA lacks the authority to promulgate a public health measure that would regulate the general risk of COVID-19 in the workplace. *See id.* Because OSHA cannot promulgate such a federal standard, none of its existing regulatory standards can preempt a state's general public health and safety measures addressing the threats posed by COVID-19.

Opposing this conclusion, Flower World argues that existing OSHA standards do regulate COVID in the workplace. *See* 29 C.F.R. § 1910.132, 29 C.F.R. § 1910.134. Flower World bases this argument on a memorandum and website post circulated by OSHA before *NFIB* was decided. In a July 2021 memorandum, the Acting Director of Enforcement Programs stated that "[s]everal OSHA standards may apply [to COVID-19], depending on the circumstances," and provided a "list of general industry standards applicable to infections diseases, such as COVID-19." *See* Updated Interim Enforcement Response Plan for Coronavirus Disease 2019 (COVID-19) (July 2021). The list included "General Requirements-Personal Protective Equipment," 29 C.F.R.

§ 1910.132, which states that PPE "shall be provided, used, and maintained . . . wherever it is necessary by reasons of hazards of processes or environment, chemical hazards, radiological hazards, or mechanical irritants encountered in a manner capable of causing injury or impairment in the function of any part of the body through absorption, inhalation or physical contact."  The list also included "Respiratory Protection," 29 C.F.R. § 1910.134, which includes "the control of those occupational diseases caused by breathing air contaminated with harmful dusts, fogs, fumes, mists, gases, smokes, sprays, or vapors," *id.* § 1910.134(a)(1). Additionally, before circulating that memorandum, OSHA had posted a "Frequently Asked Questions" section on its website, which provided a list of the "most relevant" OSHA requirements addressing COVID-19, including 29 C.F.R. § 1910.132, § 1910.134, and the OSHA general duty clause.

In light of *NFIB*, we must reject OSHA's broad interpretation of its existing regulations as applying generally to COVID hazards in the workplace. While we defer to an agency's interpretation of its own regulations under some circumstances, "if the law gives an answer—if there is only one reasonable construction of a regulation—then a court has no business deferring to any other reading, no matter how much the agency insists it would make more sense." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019).  Here, *NFIB* makes clear that we may not interpret these regulations as applying to general risks of COVID in the workplace, as that would exceed OSHA's authority. *See* 142 S. Ct. at 665.  Rather, we construe the regulations cited by Flower World as addressing specific occupational hazards caused by workplace processes that result in pollution at the workplace, not the hazard of COVID-19 or other viruses more generally.  For example, 29 C.F.R. § 1910.134 states that employers should seek to

protect employees from respiratory hazards "as far as feasible by accepted engineering control measures (for example, enclosure or confinement of the operation, general and local ventilation, and substitution of less toxic materials)," *id.* § 1910.134(a)(1), and by its own terms applies only to general industry, shipyards, marine terminals, longshoring, and construction, *id.* § 1910.134. That regulation therefore governs the specific hazards and "occupational risk[s]" of those workplaces. *NFIB*, 142 S. Ct. at 666. Similarly, the personal protective equipment requirement under 29 C.F.R. § 1910.132 applies to "hazards of processes or environment, chemical hazards, radiological hazards, or mechanical irritants" that are unique to the employer's workplace. This is confirmed by the types of cases in which the rule applies. *See, e.g., Alvarez v. IBP, Inc.*, 339 F.3d 894, 897 (9th Cir. 2003), *aff'd*, 546 U.S. 21 (2005) (applying the rule to meat packing plants where employees must wear sanitary garments, hard hats, and gloves); *C&W Facility Servs., Inc. v. Sec'y of Lab., Occupational Safety & Health Rev. Comm'n*, 22 F.4th 1284, 1285 (11th Cir. 2022) (determining whether the rule requires employers to provide personal flotation devices to pressure washers on a boat dock); *Jacobs Field Servs. N. Am., Inc. v. Scalia*, 960 F.3d 1027, 1037 (8th Cir. 2020) (applying the rule to an electrical contractor).

In contrast to these workplace specific standards, the Proclamation is a public health measure that broadly addresses a hazard of daily life faced by Americans generally. Unlike researchers working with the COVID-19 virus, or employees "working in particularly crowded or cramped environments," *NFIB*, 142 S. Ct. at 666, agricultural workers face no particular risk from COVID-19 other than those they share with citizens in general. As a public health measure, the Proclamation does not relate "to any occupational safety

or health issue with respect to which a Federal standard has been promulgated," *Gade*, 505 U.S. at 105 (quoting 29 U.S.C. § 667(b)), and employers and their employees are subjected "to only one set of regulations" addressing the general risk of COVID-19, those of the state, *id.* at 99. Accordingly, the Proclamation is not preempted by the OSH Act. *See id.*

**AFFIRMED.**